The respondent, defendant, is a corporation organized under the laws of the state of Connecticut. By chapter 195, Laws of New York, 1846, respondent was authorized to extend its railroad from the Connecticut state line to the line of the New York and Harlem railroad then in operation in this state.
Located in the city of Mount Vernon is a public highway known as Columbus avenue, running northerly and southerly. The railroad tracks of respondent cross Columbus avenue in an easterly and westerly direction upon an overhead bridge. Plaintiff alleging that the abutments of the bridge upon which the roadbed of defendant was carried across Columbus avenue constituted a trespass and public nuisance, sought in this action, which was commenced in March, 1909, to compel a removal of the same from the highway and to require respondent to restore Columbus avenue to the condition it would be if said abutments had not been constructed therein, and in the event of failure on the part of respondent *Page 312 
to restore Columbus avenue to the condition in which it would be if said abutments had not been constructed therein, and in the event of failure on the part of respondent to remove the same, that plaintiff be authorized to charge defendant with the expense of removal of the abutments and restoration of the highway.
The judgment entered upon the decision of the Special Term after a trial of the action decreed that the abutments erected by the respondent, defendant, in Columbus avenue constituted a continuing trespass and a nuisance in the highway; that defendant remove the same and the retaining embankment back of the same from the line of said highway so as to leave a clear space between the respective faces thereof of three rods in width.
Upon appeal by defendant to the Appellate Division, the judgment entered upon the decision of the Special Term was reversed and the complaint dismissed upon the merits.
The variance in the conclusions of the trial court and the Appellate Division do not arise upon any material difference as to the facts, but rather as to the law applicable to the same.
A determination of the questions presented necessitates a reference to the material facts.
The trial justice found as matters of fact: "That there were on both sides of the said highway (Columbus Avenue) stone walls or fences which enclosed a fifty foot roadway; that in the years 1847-1848 the defendant constructed its roadbed over and across said public highway now known as Columbus Avenue by means of an overhead crossing, and that in constructing its said roadbed it tore down the walls and fences marking the lines of said public highway now known as Columbus Avenue, on each side thereof where the line of the said railroad crosses the same, and erected stone abutments within the lines of said highway, which said stone abutments and retaining embankments back of the same *Page 313 
narrowed the highway at the point of crossing to a width of about twenty-three feet."
The Appellate Division in the opinion of that court expressly stated that the evidence in the case furnished sufficient support of such findings and then made additional findings in substance as follows: (a) Prior to the date of construction of defendant's railroad, Columbus avenue existed as a public highway being a country road of varying width; (b) there is no evidence tending to show how much of the highway known as Columbus avenue was actually used for public travel or how much of it, if any, was worked by the town of Eastchester at the point where defendant's abutments were originally built and at the time of their construction; (c) that within a comparatively few years that portion of the city of Mount Vernon in which Columbus avenue is situated has been rapidly developed and built up. Prior to that time said neighborhood was a sparsely settled community with few dwellings and Columbus avenue was not improved; (d) the plaintiff made no claim of right and took no steps to prevent defendant from extending its abutments in 1892, i.e., to permit the construction of two additional tracks, the said extensions being in prolongation of each of the said lines of said original abutments; (e) that when the abutments were erected within the limits of Columbus avenue in 1847 and extended in 1892 the highway was restored as near as could be to its former state so as not unnecessarily to impair its usefulness, and was satisfactory to the commissioners of highways of the town and their successors in office.
As conclusion of law, the Appellate Division held "that the abutments of defendant's bridge in Columbus avenue in the city of Mount Vernon are there by authority of law and are not unlawful encroachments in the highway."
The record discloses that the abutments erected by defendant in 1847-1848 were about fifty feet in length *Page 314 
and were extended an additional fifty feet in length in 1893.
That defendant in 1847-1848 entered upon a public highway which was inclosed by walls and fences fifty feet apart, removed the walls and fences and erected stone abutments within the limits of the highway, which abutments reduced the width of the highway to twenty-three feet, is established as matter of fact by the Special Term and Appellate Division.
The Appellate Division has determined as matter of law that the abutments so erected are lawfully there. The opinion of that court discloses the following reasons for the conclusion reached by it. Therein it is said that defendant was given certain rights in the highway which its road crossed by section 5, chapter 195, Laws of 1846, the statute which authorized defendant to extend its road into this state, which provided: "Whenever it shall be necessary for the construction of their said road, to intersect or cross * * * any road or highway, it shall be lawful for the said company to construct their road across or upon the same; but the company shall restore * * * the road or highway, thus intersected, as near as may be to its former state, so as not unnecessarily to impair its usefulness, and in respect to any road or highway, as may be satisfactory to the commissioners of highways of the town in which such road or highway may be intersected or crossed."
Applying the section quoted to the present case, the opinion indicates the construction placed upon the same. Summarized the opinion states:
The abutments were constructed seventy years ago leaving a roadway twenty-three feet wide between them. The locality at that time was a rural countryside. The abutments had stood there for sixty years unquestioned until this action was commenced in 1909.
The question whether they were lawfully built must be tested by conditions which then (1847-1848) existed. *Page 315 
The statute having conferred power upon the commissioners of highways to determine whether the highway was so restored as not unnecessarily to impair its usefulness, the long user of sixty years without objection is presumptive evidence that the condition to which the highway was restored did not unnecessarily impair its usefulness and was satisfactory to the commissioners of highways of the town.
"If it was so restored, the abutments were lawfully there and the radical change of the character of the neighborhood from rural to urban does not affect the right of the defendant."
The opinion recites the fact that commissioners appointed under the act, chapter 649, Laws of 1870, to remove encroachments from the highway left the abutments standing, the effect of which action was a decision that the abutments were not an encroachment, and enforces the presumption that the abutments were originally placed where they are with the consent of the commissioner of highways.
Section 5 of the law of 1846 above quoted was embodied in the General Railroad Law (Chapter 140, Laws 1850, section 28) and is in substance embraced in the present Railroad Law (Cons. Laws, ch. 49, section 21).
The section quoted authorized defendant to cross the highway at grade or upon an overhead crossing. If by a construction of its road it disturbed the highway it was obligated to restore the same. The language of the statute did not expressly or by implication confer authority upon defendant to permanently appropriate any part, much less upwards of one-half, of the highway to the exclusion of the public therefrom, or authorize commissioners of highways directly or by acquiescence or non-activity to consent to any appropriation or use of the highway to the prejudice of existing or future rights of the public therein. The rights of the public in a highway are paramount. Local officers having in charge *Page 316 
the care of highways are selected for the purpose of protection rather than destruction or impairment of the rights of the public. A determination that such officers may directly or indirectly confer upon an individual or corporation an interest in a public highway would be a departure from well-established principles of law. (Del., L. W.R.R. Co. v. City of Buffalo,158 N.Y. 266; City of New York v. Rice, 198 N.Y. 124.)
In Del., L. W.R.R. Co. v. City of Buffalo, an overhead crossing maintained by the railroad company plaintiff corresponded to the crossing in the instant case. The city of Buffalo by resolution of its common council directed the street commissioner to remove the encroachments erected by plaintiff from the highway at the expense of the railroad company. The latter sought to enjoin the enforcement of the order. This court held that notwithstanding the municipal authorities originally consented to the construction, the common council had no power to surrender a public street to the use of a railroad company; that if the abutments were an encroachment upon the public right and an obstruction, the city had a right to remove them; that while railroad companies are authorized to construct their roads upon or over a street or highway, such privilege is simply a general authority to cross the streets and does not operate as a sanction of legislative authority. Nothing less than express authority would shelter a railroad company from the consequence of creating a nuisance by the obstruction of a public highway. The only authority vested in the city was to consent to the crossing. Permission to cross the street was not a permission to occupy the roadway with structures that interfered materially with the highway by the traveling public.
Further statements in the opinion of the Appellate Division were, viz., that the question whether the abutments were lawfully built must be tested by conditions which existed at the time they were constructed (1847-1848), *Page 317 
also "that if the highway was restored to its former state, the abutments were lawfully there and the radical change of the character of the neighborhood from rural to urban does not affect the rights of the defendant."
Such conclusions are in conflict with the law as established by numerous decisions in this state, where it had been held that the statute (General Railroad Law 1850, identical with the act of 1846) imposed an obligation upon a railroad company to restore a highway to its former state of usefulness and to preserve it in such state, and such duty is a continuous one. (Hatch v.Syracuse, B. N.Y.R.R. Co., 50 Hun, 64; Town of Windsor v.D. H. Canal Co., 92 Hun, 127; Allen v. Buffalo, R. P.Ry. Co., 151 N.Y. 434.)
The same cases together with People v. N.Y., N.H. H.R.R.Co. (89 N.Y. 266) further hold that increase in population or business on the highway which renders the same inadequate for the needs and safety of the public requires the railroad company to make such changes as are reasonably necessary to provide for the needs of the public. The views expressed by the Appellate Division are in conflict with the decisions cited.
As heretofore pointed out, the highway in question at the point where the abutments exist has by a finding made been determined to be a populous part of the city of Mount Vernon.
The opinion of the Appellate Division dwells upon the presumption arising by reason of long use, etc., heretofore referred to, and to support its views cited the cases ofJorgensen v. Squires (144 N.Y. 280); Babbage v. Powers
(130 N.Y. 281). I do not consider the cases cited applicable to the present case. In Deshong v. City of New York (176 N.Y. 475,483) we considered what presumption if any arose by reason of the existence for a long period of time of a vault under a sidewalk in the city of New York and wrote: "It is not a presumption of a grant of the title or of a permanent right in the *Page 318 
street, as no power exists in the authorities to make such a grant or to confer any such right. The title to the streets being in the city as trustee for the public, no grant or permission can be legally given which will interfere with the public use."
The same principle was applied in Lincoln Safe Deposit Co. v.City of New York (210 N.Y. 34, 39); City of New York v.Rice (198 N.Y. 124).
Clearly defendant never became possessed of any interest in the highway by prescription or limitation of time. The only right it possessed was to cross the highway. Columbus avenue being a public highway could not cease to be such save by action of the general public or by the public authorities in formally closing the same. (City of Buffalo v. D., L. W.R.R. Co., 190 N.Y. 84;City of Cohoes v. D. H. Canal Co., 134 N.Y. 397; St.Vincent's F. Orphan Asylum v. City of Troy, 76 N.Y. 108.)
The city of Mount Vernon was incorporated by chapter 182, Laws of 1892. The common council of the city is clothed with all powers given by law to commissioners of highways and was the proper party plaintiff in this action. Upon the argument of the appeal, counsel for defendant urged that any remedy available to plaintiff was provided for by section 91 of the Railroad Law (Cons. Laws, ch. 49). The section referred to was amended in 1913, four years subsequent to the commencement of this action. The jurisdiction of the Supreme Court was not attacked by demurrer, answer or upon the trial; therefore, cannot be urged for the first time in this court. It is unnecessary to decide the effect of a law enacted four years subsequent to the commencement of an action upon the pending suit.
It is said by defendant that taxes had been assessed upon property upon which the abutments stand, including local improvements and special franchise, all of which have been paid. It appears from the brief of counsel that *Page 319 
the assessment for local improvement had been canceled by the courts.
If the assessors erroneously assessed defendant for property not owned by it, defendant had a remedy at law for relief from such assessment. By payment of taxes thereon, neither that act, nor the error if one was made by the assessors, could operate as an estoppel against the public and vest title to the land in defendant, it being a trespasser thereon. The assessors of the city and the city combined were powerless to thus surrender a public highway or any portion of the same to defendant.
I recommend that the order of the Appellate Division be reversed and that the judgment of the Special Term be reinstated, with costs to appellant in this court and the Appellate Division.
CARDOZO, POUND, McLAUGHLIN and ANDREWS, JJ., concur; CRANE, J., not voting; HISCOCK, Ch. J., not sitting.
Ordered accordingly.