FRANCES N. STURMAN, Respondent, *v.* NEW YORK CENTRAL RAILROAD COMPANY, Appellant.

Argued June 4, 1940; decided July 24, 1940.

*K. O. Mott-Smith* and *Clive C. Handy* for appellant.

*Ralph Stout, Louis Rothbard, A. S. Cutler* and *Abraham Males* for respondent.

Judgment affirmed, with costs; no opinion.

Concur: LEHMAN, Ch. J., LOUGHRAN, RIPPEY and CONWAY, JJ. LEWIS, J., dissents in the following opinion, in which FINCH and SEARS, JJ., concur:

LEWIS, J. (dissenting). My dissent from the view of a majority of the court rests upon my failure to find any evidence that the plaintiff's injuries resulted from a breach of duty by the defendant railroad. In cases such as this, of alleged tort liability where the fact of plaintiff's personal injuries is not questioned, it is not enough to find a breach of legal duty by the party charged with fault. A chain of causation between the breach of duty and the injuries must be found intact. Here that chain of causation is not intact.

I accept the plaintiff's assertion that in relation to the highway bridge which the defendant railroad had erected in 1911 to carry the Albany Post Road over its tracks near Crugers, N. Y., the defendant was under a continuing duty to maintain the bridge and to exercise reasonable care not unnecessarily to impair the usefulness of the highway. (Railroad Law [Cons. Laws, ch. 49], § 21; *Sturman* v. *N. Y. C. R. R. Co.*, 280 N. Y. 57, 61.)

As the Albany Post Road approaches defendant's bridge from the south the paved highway surface gradually narrows from its full width of twenty-seven feet, at a point one hundred and twenty feet south from the structure, to a width of twenty and three-tenths feet where the highway enters ʿthe bridge. As means of warning north-bound traffic of the danger incident to the narrowing of the roadway the State highway authorities, in the exercise of their exclusive authority to do so (Vehicle and Traffic Law [Cons. Laws, ch. 71], § 88, subd. 9), have erected various signs, signals and safety devices. At a point 580 feet south of the bridge and facing north-bound traffic is a large sign of black

and white checkerboard design on which appears in letters six inches high the word " Danger " and in letters five inches high the words " Narrow Bridge." From that point northerly on either side of the highway and three and one-half feet from the edges of the pavement are rows of white posts ten feet apart between which are strung steel cables. As one approaches the bridge he passes on his right, facing him, a lettered sign twenty-five by nine inches upon which appears in reflector buttons the word " Slow." Finally, between the " Slow " sign and the bridge structure, there is erected on the outer edge of the easterly shoulder of the road an octagonal red reflector sign, the presence of which, as we shall see, had an important bearing upon the cause of this accident.

The accident occurred about midnight on December 14, 1930 — a clear night, when the paved surface of the road was dry. The plaintiff was a passenger in a car, driven by one Levey, which was proceeding northerly on the Post Road. At a point 766 feet south from defendant's highway bridge the road curves to the northwest over a distance of about 250 feet at the end of which curve and for a distance of 414 feet leading to the bridge the road is straight. Its grade around the curve mentioned above is descending and gradually diminishes until a point is reached 165 feet from the bridge where it ascends slightly to the level of the bridge floor.

If we consider the testimony of Levey, who was the only eye witness who was able to describe the accident in detail, it appears that he approached the bridge on the right or easterly side of the center line of the highway at a speed of twenty-five to thirty miles per hour and without interference by traffic of any kind. He did not see either the " Danger — Narrow Bridge " sign or the reflector " Slow " sign. Finally, however, he reached a point where he saw, forty feet ahead of him, the octagonal red reflector sign. It is important to note that at no time did his car leave the paved surface on the right or easterly side of the road; he did not strike the curbing to his right which bordered the

narrowed roadway leading onto the bridge floor nor did he strike any part of the easterly side of the bridge structure or its approaches on his right. The point which influences my judgment is that, instead of coming into contact with the curbing to his right or with some part of the highway facilities or the bridge which served to create the dangerous narrowing of the roadway, he turned his car suddenly to the *left* immediately upon seeing the red reflector sign. Having reacted in that manner to the warning sign he applied his brakes, skidded fifty feet along a dry pavement, mounted the *left* or *westerly* curb on the opposite side of the road and there crashed through a pipe railing which served to fence the west side of the roadway leading to the bridge. From that point his car plunged forward over telephone wires strung beneath the bridge and fell to the defendant's railroad tracks below. At some point in the strange course of the car the plaintiff sustained the serious personal injuries for which she has been awarded a verdict.

Conceding, of course, that the negligence of the driver Levey is not to be imputed to the plaintiff and admitting the continuous legal duty which was the defendant's, to which reference has been made, I find nothing in the record which justifies the legal conclusion that the plaintiff's injuries resulted directly from a breach of legal duty by defendant.

A different question would be here if Levey had struck the easterly curb or some obstruction in the highway or bridge which served to accomplish the narrowing of the roadway to accommodate its width to the narrow bridge. But instead of having the progress of his car affected by the dangerous feature of the highway — the narrowing of the roadway — it was the warning of the red reflector sign which caused his abnormal reaction to it. He tells us: " To me it [the red reflector sign] indicated some sort of a dangerous condition, any one of a few things: some excavation, some danger point, a stalled truck, anything at all that indicated danger. * * * Q. Was your car under control at the time? A. Yes, sir. * * * Q. And you turned your car to the left then? A. Yes, sir. * * * Q. What did you do?

A. As I told you before, I threw the clutch in, took my foot off the accelerator and put my foot on the brake. It all happened in a split second, you know. The light just threw itself right at me suddenly, with no indication or warning beforehand, and here I am riding along at a fairly decent rate, and suddenly this light just jumps right into my face, and I naturally turned to the left. * * * when I saw this light suddenly confronting me, I swung to the left thinking I had plenty of room on the left. It was then that I saw the outlines of this bridge and a comparatively narrow roadway through which I had to navigate in order to get over the thing safely. [The width of the bridge roadway was twenty and three-tenths feet.] Now, I had swung over to the left. When I saw that narrow roadway which I had to go across, I quickly turned to the right, and before I knew it, I went over the rail. * * * "

Thus does the record make it clear to me that plaintiff's injuries were not caused by the presence of defendant's bridge and the narrowing highway leading to it, nor by a lack of warning of the danger to traffic thus created. When the plaintiff charged the State with negligence which she then alleged to be the sole cause of her injuries, this court unanimously affirmed findings made by the Appellate Division that " It would not have been necessary for Levey to vary the course of his car at all in order to safely cross the bridge," and that " The sole and proximate cause of the accident was Levey's negligence in failing to observe and heed the warnings that the State had placed to apprise passing motorists of the potential danger of the narrow bridge, and, moreover, the negligent manner in which the car was being operated." (*Sturman* v. *State of New York*, 244 App. Div. 865; affd., 269 N. Y. 627.) My examination of the record of trial in the case last cited discloses no substantial difference from the record now before us as it relates to the witness Levey's description of the manner in which the accident happened.

The present record is devoid of evidence which connects plaintiff's injuries with defendant's fault. Rather does it

disclose that the cause of the accident was the abnormal reaction of the driver Levey to a warning sign. Legal liability cannot be predicated upon abnormal reaction to a precautionary measure for which the defendant was not responsible.

Judgment affirmed.