HORACE B. CASEY, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 28312.)

Court of Claims, February 3, 1948.

*Joseph P. Keenan* for claimant.

*Nathaniel L. Goldstein, Attorney-General (Edward R. Murphy* of counsel), for defendant.

LAMBIASE, J.    The claim herein has been filed for damages to claimant's automobile and to its contents sustained at or about 12:30 A.M. on August 9, 1946, on a highway controlled and maintained by the State of New York and forming part of its patrol system on which claimant was traveling.

The record discloses: That on the day and at the time above mentioned, claimant was driving his 1941 Chevrolet five-passenger coupe, with its headlights lighted on the high beam, in a general easterly direction on New York State Highway No. 566, Route 43, also known as the Wolf Hill-Berne State Highway in the town of Berne, Albany County, New York, and particularly at a point thereon which is just east of the hamlet of East Berne, New York; that said highway continues easterly from said point on a descending grade until it reaches another point where it makes a turn to the right, its direction then becoming a general northerly and southerly one; that at or near the point of said turn to the right, said highway forms an intersection with a town or county road which makes a juncture with it on the east side of the intersection; that said town or

county road has a gravel surface which has been treated with oil; that as said State highway continues southerly from said intersection, it is carried by a culvert about 20 feet long across a stream of water known as Foxe's Creek; that at a point about 350 feet to the west of the tangent of the aforementioned curve to the right, which point is also about 450 feet west of the north end of said culvert measured along said highway, and located on the shoulder on the south side of said highway there was on the day of said accident herein described a sign which had been erected by the State of New York; that said sign was located 5 feet 3 inches to the south of the south edge of the pavement, and is described as being 3 feet wide and 2 feet high, and bearing on it the legend " WARNING " and " CURVE " together with a curved arrow, the latter with its head pointing southerly and indicating a curve ahead to the right and to the south for the traveler proceeding easterly on said State highway, the lower edge of said " CURVE " sign being 4 feet from the level of the ground; that about 45 or 50 feet to the east of said " CURVE " sign and located about 4 feet 3 inches to the south of the south edge of the pavement of said highway with its lower edge 3 feet 4 inches from the level of the ground there was on said day a reflector type sign 2 feet 4½ inches wide and 11½ inches high bearing thereon the legend " SLOW "; that the pavement of the State highway to the east of said " CURVE " sign first described and down to the beginning of the intersection. is 18 feet in width; that at the curve, through the intersection, and proceeding southerly until the highway gets to the culvert, the width of the pavement of said highway is 20 feet; that the degree of the curve at said intersection is 81 degrees, 48 minutes; that the State highway at the curve is banked, and the lane for northbound traffic at said point is about 2½ feet higher than the lane for southbound traffic; that about 200 feet to the west of the culvert and located on the north side of the State highway there was on the day in question a pole to which there was attached a 250 candlepower light which was suspended at a height of 15 to 18 feet above the highway, said light being part of the lighting system of the hamlet of East Berne; that said light had last been inspected previous to the date of the accident on July 23, 1946, and at that time it had been found in good order; that it had been " turned on " about 7:27 P.M. standard time on August 8, 1946, although there is no proof that it was lighted at or about the time of the accident, and had been

" turned off " at 4:35 A.M. on August 9, 1946, the day of the accident herein; that the State had erected a log or timber guard rail or barrier with a cable behind it on the east side of said culvert, and had painted the logs white; that said logs were about 8 inches in diameter, were piled two high across the east side of the culvert, and were placed so that they extended some 12 or 13 feet beyond the north end of the culvert on the east side of said highway and toward the intersection; that on the west side of said culvert there was an iron pipe guard rail, the pipe being about 2½ inches in diameter, and that to the north of said culvert on the west side of said highway there were single concrete posts erected at intervals; that the difference in elevation between the point where the " CURVE " sign was located and the intersection is 20.7 feet; that the shoulders on either side of said highway at the points herein mentioned are 5 or 6 feet wide; that previous to August 9, 1946, claimant had been over said highway about 5 or 6 times traveling in an east to west direction; that at the time of the accident there was no moonlight, although it was not a dark night; that the pavement was dry and the weather was clear; that claimant was driving alone, and that at the time of the accident he was driving not over 38 miles per hour; that at the time of the accident he was returning from a one-day business trip and had covered about 400 miles; that claimant saw the " CURVE " sign; that he didn't recall seeing the " SLOW " sign just east of the " CURVE " sign; that the only sign that claimant remembers seeing was the " CURVE " sign indicating a curve to the right; that as he became aware of the necessity for turning to the right, he applied his brakes and turned the wheel of his car sharply to the right; that at said time he was driving on the top outer edge of the curve; that his car turned around in the highway, and that he didn't complete the curve; that his car left the highway on the west side thereof and dropped about 8 to 10 feet to the bed of Foxe's Creek where it came to rest in about 4 feet of water; and that it knocked down one of said concrete guard posts on the west side of said State highway as it traveled toward and into said creek. The foregoing is a detailed recital of the facts which we deem established by the evidence.

Claimant alleges: " That on August 9, 1946 said highway intersection was obscured from the west by a curve in the State Highway and by growing foliage and defendant had failed and neglected to supply, erect and maintain in place adequate or suitable signs, signals, lights or other warning

devices to acquaint the traveling public of the nature of the intersection or its proximity." (Claim, par. 8.) He alleges further that: " Said accident occurred solely through the fault of the defendant in failing and neglecting to warn claimant by signs, lights or signals of the imminence and nature of the danger at the intersection and without any negligence of claimant contributing thereto." (Claim, par. 10.) It is upon these particulars of negligence that claimant predicates liability on the part of the State.

There is no longer any question concerning the duty of the State to erect proper and adequate warning signs, and if their absence is the proximate cause of injury to persons or property, the State is liable for the resulting damage. (*LeBoeuf* v. *State of New York,* 281 N. Y. 737.)

It is not denied by claimant that the two signs located to the west of the culvert were in place on the morning of the accident. With reference to them he says merely: "I don't recall the slow sign which is located about 50 feet further to the east. The only sign I remember is the warning sign, warning with the arrow pointing to the right on the curve ". (S. M. 15, 16.) Claimant was bound to see the " SLOW " sign just as he saw the " CURVE " sign. He was bound to see what, by the proper use of his senses, he might have seen. The statement that a witness does not see what he should have seen is incredible as a matter of law. (*Weigand* v. *United Traction Co.*, 221 N. Y. 39, 42.)

The State Traffic Commission, under authority of section 95-h of the Vehicle and Traffic Law of the State of New York, adopted, on October 20, 1936, effective December 16, 1936, and in effect on the day of the accident herein, what is designated as its rule No. 1 which, at all times herein mentioned, read as follows: " Rule No. 1. Every driver of a vehicle upon a public highway shall comply with the instructions conveyed by any stop, speed, slow, caution, movement, alignment, exclusion, restriction, parking or other regulatory sign, signal or marking established or maintained by or with the authority of the State Traffic Commission." Proof of the due adoption of said rule by the State Traffic Commission was adduced by the claimant upon the trial. It was incumbent upon the claimant to have complied with the provisions of the foregoing rule and to have obeyed the instructions conveyed by the signs herein described. It does not appear that claimant slowed down the speed of his automobile between the time that he observed the " CURVE " sign and the time of the happening of the accident, except that we

may infer that the speed thereof was retarded somewhat when he applied the brakes immediately before the accident. We may infer, also, however, that it was still going at a considerable rate of speed after the application of the brakes since it toppled over a concrete guard post on its way into the creek.

We are of the opinion that it was the negligent manner in which claimant operated his automobile which caused said accident, or contributed, as a proximate cause, to its happening, and that without said negligence of the claimant the accident with the resulting damage to claimant could not have happened. (*Sturman* v. *State of New York,* 244 App. Div. 865, affd. 269 N. Y. 627, motion for reargument denied 271 N. Y. 547; *cc Sturman* v. *New York Central R. R. Co.,* 280 N. Y. 57; *cc Sturman* v. *New York Central R. R. Co.,* 283 N. Y. 709; *Ruggiero* v. *State of New York,* 256 App. Div. 437.)

In view of our determination herein we do not discuss the items of damage alleged in the claim, although, as a matter of fact, there is no dispute as to their extent and amount.

Claimant has failed to prove facts sufficient to constitute a cause of action against the State, and his claim herein must be and hereby is dismissed upon the merits. Decision accordingly.