Fred A. Young, J.
At about 7:30 in the morning of May 28, 1957, George W. Barnhart, the claimant herein, was on his way to work. He resides in the Village of Middleport, New York; at 8 North Main Street, a distance of some two or three hundred feet from the bridge in question.
The State of New York maintains a lift bridge over the Barge Canal on Main Street in the village. The bridge was operated in the following manner: as a boat approached the lift bridge, the operator of the boat would signal the operator of the bridge with three blasts of the boat’s horn. The operator of the bridge would then send a bridge tender to the street with a stop .sign to warn both pedestrians and operators of automobiles. He then would ring a bell which could be heard by both pedestrians and operators of automobiles for some distance sufficient to give the traveling public warning that the bridge would be lifted. The bridge operator would then turn on the control to lift the bridge and at the same time would turn on the switch for the red lights which were maintained at both ends of the bridge and he would then begin to lift the bridge. He then would give one blast of the horn to notify the operator of the boat that the boat could proceed. At all times during this operation the bridge operátor would look to the north and south continually to be sure that no traffic approached the bridge that had not stopped. This procedure was followed all day during the lifting of the bridge *95 except that during the night from twelve midnight to 8:00 a.m., there was no bridge tender on duty and no bridge tender had been on duty for some time prior to the date of the accident.
It is the contention of the claimant that on the date of the accident herein, as he was about to enter upon said bridge and was about 10 to 15 feet away from the bridge, that without warning, the bridge was suddenly propelled upward and he crashed into the bridge as it was being lifted, causing his car to be raised with the bridge, completely demolishing his 1949 Chevrolet automobile, and he sustained serious personal injuries, some of which are permanent. Claimant further contends that at the time of the accident, he was traveling at about 20 miles per hour; that the bridge was lifted without warning; that the bell was not rung; that the red light on the bridge was not operating and that the accident in question was caused solely through the negligence of the State of New York, its agents, servants and employees with no negligence on his part contributing thereto.
Two disinterested witnesses, Harry Stangland and his wife, Ruth, appeared on behalf of the claimant. It developed that they operated a meat market about 50 feet from the bridge; that they had just arrived to open their place of business and as they got out of their car, they heard a crash and immediately looked up and saw the car of the claimant as it was being raised with the bridge; that they heard no bell rung before the bridge was lifted; that the light on their end of the bridge was not red at the moment of the crash; that the witness, Harry Stangland, had noticed workmen repairing the red light for two days before the accident; that in his opinion the red light had been out of commission for two days and had not been operating properly and was being repaired.
The State of New York put forth seven witnesses: Dr. Hubei, who testified as to claimant’s injuries; Leo Ham, who was hard of hearing and was excused by the court; Marshall Jackson, an employee of the Department of Public Works who offered a sketch of the bridge; George M. White, the day operator of the bridge who knew nothing of the accident but who conducted a test after the accident and who explained in detail the operation of the bridge, as explained supra-, Alton Grove, an employee of the Department of Public Works, Division of Canals, who testified ás to reports in the files of the department; Carl J. Falls, who was the bookkeeper of the claimant’s employer and who testified as to claimant’s wages and earning capacity; and one witness, Francis J. Ryan, who was the operator of the bridge at the time of the accident, was the only witness who knew any *96 thing about the accident. Among other things he claims that he looked both to the north and south and he saw no traffic approaching the bridge.
The court cannot agree with this contention. There is one inescapable conclusion — the operator of the bridge was not looking at the time the bridge was being lifted. Whether claimant was traveling 20 miles per hour, or at a greater speed, the operator of the bridge was “ bound to see what, by the proper use of his senses, he might have seen ”. (Casey v. State, 191 Misc. 95, 99, affd. 273 App. Div. 1048; Weigand v. United Traction Co., 221 N. Y. 39, 42.) We conclude, therefore, that the operator of the bridge did not look, for had he looked he would have seen the claimant’s car approaching. We further find that the claimant herein was free of contributory negligence; that he was lawfully proceeding at about 20 miles per hour and that the bell was not sounded at the time of the accident.
The claimant received serious injuries, some of which are permanent. He received a concussion of the brain and suffers periodic headaches, at least one a week; fracture of the bridge of the nose; stiffness of the left arm; laceration of the upper lip and back of the left hand; sprain of the right knee, leg and ankle and has a permanent flexion limitation of motion in the right knee of about 8 to 10%, all of which said injuries were caused as the result of the accident herein.
Claimant sustained the following special damages arising out of said accident: loss of automobile, $70; hospital and X rays, $85; total doctors bills, $180; loss of wages for three months, $376.80, for a total of $711.80.
That in addition thereto he has sustained damages for permanent injuries, pain, suffering and for loss of prospective earnings due to the permanent injuries, in the sum of $6,500, and is entitled to an award against the State of New York in the sum of $7,211.80.
The foregoing constitutes the written and signed decision of the court upon which judgment may be entered. (Civ. Prac. Act, § 440.) ■
Let judgment be entered accordingly.