John P. Gualtieri, J.
There are involved here two claims against the State of New York predicated upon negligence and involving a three-car automobile accident which occurred on *230 October 12, 1958, on State Highway Route 50 known as the Schenectady-Ballston Spa Road.
The claimant, Elizabeth L. Robinson, was the operator of a 1956 Plymouth Station Wagon owned by her husband, Russell J. Robinson, which was proceeding in a northerly direction on Route 50 at or near the intersection of Route 50 with a town road known as the Outlet Road on the east and a county road known as the Charleton Road on the west. The county road and the town road would be a continuation of each other but for the intersecting State Highway Route 50.
One Valerie Rollier was operating a 1950 Dodge automobile in a westerly direction on the Outlet Road, coming into this intersection at the time of the accident.
The third vehicle, a 1956 Chevrolet, was being operated by one Frank Hyjek in a southerly direction on Route 50.
These three vehicles came into collision at this intersection resulting in injuries to the claimants, Elizabeth L. Robinson and Russell J. Robinson, who have joined their causes of action in one claim and to the brother of Mrs. Robinson, Lawrence F. Lipe, who is also a claimant here.
Route 50 was at the time of the accident a highly travelled main artery of travel. The two roads intersecting Route 50 at the point of the accident are secondary roads, with less traffic, the county road intersecting the State highway from the west bearing somewhat more traffic than the Outlet Road, the town road meeting the State highway from the east.
There were traffic signs both north and south of the intersection warning motorists of the approaching intersection. There was a stop sign on the county road directing traffic moving easterly to come to a stop before entering Route 50. There was no traffic sign on the Outlet Road except a sign visible to motorists traveling westerly on said road that they were approaching Route 50 which sign had arrows pointing to the north and south.
This accident happened on a clear, bright, sunny Sunday afternoon. Traffic on Route 50, going both northerly and southerly was described as heavy.
The claimant, Elizabeth L. Robinson, with her brother, the claimant, Lawrence F. Lipe, sitting in the front seat beside her and her husband, Russell J. Robinson, seated in the rear seat, testified that she was traveling in a northerly direction approaching this intersection at about 35 miles per hour. She claims that as she approached the intersection she saw no car coming from her right, the Outlet Road, and when in the intersection there was a crash involving her automobile and the Rollier *231 vehicle which came out of the Outlet Road and that this collision caused the ITyjek vehicle which was traveling southerly to become involved in this accident.
Mrs. Rollier, although not a party to this litigation, was sworn as a witness on behalf of the claimants. She claims that she was proceeding westerly on the Outlet Road; that she observed no traffic signs; that as she neared the State highway she slowed down almost to a stop and seeing no traffic proceeded into the intersection and that there was a crash. She testified at the trial that she had no recollection of seeing the Robinson vehicle approaching from her left. It was brought out that she testified at a Motor Vehicle Bureau hearing that she came to a complete stop at the intersection; that she saw the Robinson station wagon 200 or 300 feet south of the intersection and presumably felt that she had sufficient time to get across and went into the intersection after stopping.
Her testimony was vague, indefinite and unsatisfactory. The simple fact remains that if she stopped at the intersection she nevertheless took a chance on being able to hasten through the intersection before the Robinson vehicle reached that point; if she did not come to a complete stop, but simply slackened the speed momentarily and entered the intersection without seeing the Robinson vehicle her testimony would still be of little help because the Robinson vehicle had to be somewhere in the vicinity of the intersection for these vehicles to come into contact with each other a few feet from the point where she claims she slowed down. It must be borne in mind that there was no sign facing the Rollier car at this intersection directing her to stop and yield to traffic on the State highway and that she was approaching the intersection from the Robinson car’s right. It is our finding that Mrs. Rollier did not come to a complete stop at the intersection but merely slowed down as a motorist would naturally do approaching an intersection.
Prior to 1957 the Outlet Road had a gravel base. In 1957 the Town Highway Department improved the Outlet Road making it a 26-foot paved highway with shoulders on each side and the road was designed and constructed upon specifications approved by both county and State officials. Immediately after this improvement and because of the potential increase in traffic on said town road, the town caused to be erected at the intersection of said road with the State highway a stop sign directing traffic approaching the State highway from the east, traveling west, to come to a complete stop before entering the intersection. Unfortunately, for sortie reason not satisfactorily explained, employees of the State Department of Public Works removed the *232 stop sign, returned it to the Town Superintendent of Highways informing her that she had no right to have erected that sign. The State did not replace the sign with any other kind of traffic control until the time of the accident.
At the time of the accident the speed limit in this area was 50 miles per hour on all three roads at this intersection, namely, State Highway Route 50, the county road intersecting the State highway from the west which had a stop sign and the town or Outlet Road where there was no regulatory traffic sign whatsoever.
The claimants swore as one of their witnesses a highway safety traffic engineer who made a survey of the intersection and who testified that good and sound highway engineering practice dictated that there should have been in the exercise of proper judgment at least a “ Yield ” sign against traffic entering Route 50 from the Outlet Road and that under all the circumstances then existing prudence and good judgment required that a “ Stop ” sign should have been placed there.
The expert testified that there existed on the Outlet Road a vertical curvature just before reaching the intersection with an incline making it difficult for a motorist traveling westerly on that road to see Route 50 straight ahead until he was about 100 feet from the intersection and that it was impossible to see to the left or south of the intersection until the motorist was 70 to 75 feet away from the intersection. He further testified that in the southeasterly quadrant of the intersection there were trees and brush which obstructed visibility to the south and that under all the conditions then existing it was not sound, safety engineering practice to permit this section of the intersection to have no traffic control whatsoever at the time of this accident.
The State must erect warning signs where necessary and if their absence is the proximate cause of injury or damage the State is legally responsible therefor. (Miller v. State of New York, 231 App. Div. 363, 369 [1931]; Le Boeuf v. State of New York, 169 Misc. 372 [1938], affd. 256 App. Div. 798, affd. 281 N. Y. 737 [1939] ; Eastman v. State of New York, 303 N. Y. 691 [1951]; Applebee v. State of New York, 308 N. Y. 502 [1955].)
The court finds that the State was negligent in failing to have erected at this intersection prior to the happening of this accident a “ Stop ” sign on Outlet Road, or at least to have placed there a “ Yield ” sign and that such negligence on the part of the State was a contributing factor in this accident. Permitting traffic to enter this State highway from a 26-foot paved town road without any traffic control whatsoever was a careless and negligent situation for the State to have allowed to exist par *233 ticularly in view of the physical conditions then existing on the easterly side of the intersection.
From the evidence before the court there was no more compelling reason to have a ‘ ‘ Stop ’ ’ sign across from the Outlet Road on Charleton Road. There was no sound reason for State officials to have removed the sign which the town had discreetly placed there, without substituting some form of traffic control; especially in view of the fact that an employee of the State Department of Public Works testified that after the town improved the highway he recommended that a study be made for the purpose of re-evaluating the situation in the light of then existing traffic conditions. There is no evidence that the State did anything about this situation notwithstanding the fact that the State and its employees had full knowledge of the existing conditions.
We feel that the State’s negligence was a contributing cause because Mrs. Rollier who was operating her automobile on the Outlet Road entering the intersection would have been required to stop her vehicle and yield to traffic on the State highway had there been any warning or directive sign prescribing such conduct on her part. Absent such a regulatory sign this operator could properly feel that she had a right to attempt to enter this intersection even if she saw a vehicle approaching from her left. If the Robinson car was farther away from the intersection than she was Mrs. Rollier had just as much right to expect the Robinson car would yield the right of way to her inasmuch as she was entering the intersection from the right. The absence of any traffic control from Outlet Road was certainly one of the causes of this accident. (Vehicle and Traffic Law, §§ 1140, 1142, 1172, 149.)
Applebee v. State of New York (308 N. Y. 502, supra), although reaching a different conclusion in finding in favor of the State, supports the conclusion we have reached as to the State’s negligence. There the evidence was clear that the vehicle entering the main highway came to a complete stop. The absence of a “ Stop ” sign was therefore immaterial. The operator there knew that she had to come to a stop and did so. Here, we find as a fact, that the Rollier car did not come to a stop; had the £ £ Stop ’ ’ sign been there she presumably would have obeyed the direction and yielded to traffic moving on Route 50.
We must find upon the record before the court, however, that the claimants, Elizabeth L. Robinson and Russell J. Robinson, cannot recover. Mrs. Robinson was guilty of negligence contributing to the happening of this accident. On the evidence the court is satisfied that Mrs. Robinson could and should have seen *234 the approaching Rollier car when she was 100 to 150 feet south of the intersection. She claims she saw no vehicle. A motorist is bound under the law to see what is before him or her and her failure to see this Rollier car has not been satisfactorily explained to this court. It is incumbent upon her to establish her freedom from contributory negligence which she has failed to do. (Weigand v. United Traction Co., 221 N. Y. 39, 42 [1917]; Casey v. State of New York, 191 Misc. 95, 99, affd. 273 App. Div. 1048 [1948]; Hicks v. State of New York, 4 N Y 2d 1 [1958].)
Her husband, the owner of the automobile and a passenger in it at the time of the accident, similarly is precluded from recovery here. (Wood v. Coney Is. & Brooklyn R. R. Co., 133 App. Div. 270 [1909] ; Gochee v. Wagner, 257 N. Y. 344 [1931].)
We come to a different conclusion in the case of the claimant, Lawrence F. Lipe, a passenger in the Robinson vehicle. We find in his case that the negligence of the State of New York has been established and that he was guilty of no contributory negligence in connection with this accident.
Mr. Lipe received some very serious injuries in this collision for which he is entitled to an award in the sum of $9,848.60 and judgment in that amount against the State of New York is hereby directed.
By separate memorandum filed herewith the court discusses the medical evidence, the damages and injuries sustained by Mr. Lipe and the elements taken into account by the court in making the award to the claimant.
Mr. Lipe has not assigned his claim nor has the claim been submitted to any other court or tribunal for audit or determination.
The claim of Elizabeth L. Robinson and Russell J. Robinson against the State of New York is hereby dismissed and judgment of dismissal is directed accordingly.