service of the answer was not effective, so the court overruled the demurrer, and the judgment appealed from was entered.

There was no claim that the amended answer was for the purpose of delay, and no claim that the plaintiff would by reason thereof lose the benefit of a term. Section 542, Code Civ. Proc. In fact, the elimination of the defense demurred to will be likely to expedite the trial of the case on the merits. Now, the judgment having been entered, if it was improper, I think the remedy was by motion at Special Term to correct it. Peabody v. West, 119 App. Div. 103, 103 N. Y. Supp. 942. Instead of doing this, he preferred to take the chances of an appeal. Inasmuch as he insisted on arguing the demurrer and procuring the entry of the judgment in order that he might appeal, I do not think he is in a situation to complain of the judgment. It was stated on the trial by the respondent's counsel, and assented to by the counsel for the appellant, that the latter procured the decision to be signed by the judge and also entered the judgment himself, and he states in his brief that the interlocutory judgment was prepared and entered by him. This condition of affairs is then presented: The plaintiff's counsel, at his peril (Ostrander v. Conkey, 20 Hun, 422), served the demurrer to the alleged defense set forth in the defendant's answer before the time expired for the latter to amend as of course. After the demurrer had been noticed for trial, but before his time to serve the amended answer had expired, one was served within time. An affidavit of this fact was presented to the court, with the amended answer, on the argument of the demurrer, and still the plaintiff's counsel, without showing that the amended answer had been served for delay, insisted that it was invalid, and that proof of the fact of the service of the amended answer and its presentation to the court were improper, and that the demurrer should be sustained. The court disagreed with him, and the usual interlocutory judgment was entered by the appellant; and, instead of making the motion, he has appealed to this court. I think the only course for us to pursue is to affirm the interlocutory judgment, with costs. The amended answer has been received and accepted by the appellant's counsel, as was stated on the argument, so that apparently both parties were willing to treat the original answer as superseded by the amended answer.

The interlocutory judgment should be affirmed, with costs.

Judgment affirmed, with costs. All concur.

---

HORNELL & D. R. CO. v. TRUSTEES OF INCORPORATED VILLAGE OF DANSVILLE.

(Supreme Court, Appellate Division, Fourth Department. July 7, 1908.)

1. RAILROADS—RIGHT OF WAY—PERMISSION TO USE STREET—NECESSITY OF USE—EVIDENCE.

In an application by a railroad company for permission to construct its road on a village street under Railroad Law, Laws 1890, pp. 1084, 1087, c. 565, § 4, subd. 4, and section 11, authorizing the construction of railroads on highways on order of the Supreme Court at Special Term, evidence considered, and *held* insufficient to show the necessity of constructing the road on the street.

2. SAME—OTHER AVAILABLE ROUTES—CONVENIENCE AND EXPENSE.

The mere fact that it is more convenient and less expensive for a railroad company to construct its road on a highway than by some other route, while a proper matter for consideration on application for permission to construct the road on the highway, under Railroad Law, Laws 1890, pp. 1084, 1087, c. 565, § 4, subd. 4, and section 11, is not controlling.

Williams, J., dissenting.

Appeal from Special Term, Livingston County.

Application of the Hornell & Dansville Railroad Company for permission to construct a railroad upon and along a street in the village of Dansville. From an order granting such application, the trustees of the incorporated village of Dansville appeal. Reversed and remanded.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

B. G. Foss, for appellant.

Fred W. Noyes, for respondent.

KRUSE, J. The Hornell & Dansville Railroad Company, the petitioner, applied at Special Term for permission to construct its railroad along Lincoln street, in the village of Dansville. The order was granted, and the trustees of the village appeal.

It is contended on behalf of the village that the order is unauthorized, and that, if the court had authority to make the same, the order was improvidently granted. The petition alleges that the petitioner is organized under the railroad law of the state of New York. It does not, however, specifically state under which provisions of the railroad law it is organized—whether under the general provisions or as a street surface railroad. If the latter, it is without authority to construct or operate a street surface railroad upon and along the street in question, since such a corporation is required to obtain the consent in writing of one-half in value of the property bounded on, and also the consent of the local authorities having control of the street upon which it is proposed to build the railroad, or, if the consent of the property owners cannot be obtained, application may be made to the Appellate Division of the Supreme Court, and the question determined whether such railroad ought to be constructed or operated; (Const. Art. 3, § 8; Railroad Law, Laws 1890, pp. 1108–1111, c. 565, §§ 91, 94), which has not been done in this case. This provision applies to every corporation which, under the provisions of article 4 of the railroad law, relating to street surface railroads, or of any other law, has constructed or shall construct or operate, or has been or shall be organized to construct or operate, a street surface railroad. Railroad Law, Laws 1890, p. 1108, c. 565, art. 4, § 90.

It is contended, however, upon the part of the petitioner, that it is organized under the general provisions of the railroad law, and is not a street surface railroad corporation, and that, therefore, under the provisions of subdivision 4 of section 4 of the railroad law, the petitioner is authorized to construct and operate its road upon and along the street in question, without complying with the provisions of the law

relating to street surface railroads, and is only subject to the limitations contained in section 11 of the railroad law, which provides that no railroad corporation shall construct its road in, upon, or along any highway in any town or street in any incorporated village without the order of the Supreme Court, made at Special Term, as therein provided. It seems to have been assumed at Special Term that the petitioner is organized under the general provisions of the railroad law, and is not a street surface railroad corporation. Assuming that to be true, we are not satisfied from the record before us that the necessity or propriety of constructing the railroad upon and along this street has been shown. The petition shows that the petitioner proposes to build a railroad of standard gauge for general traffic, to be operated by locomotive steam power or by electrical or other mechanical power, from a point in the village of Dansville, Livingston county, to a point in the town of Burns, Allegany county, about 10 miles in length, beginning at a point in the village of Dansville, which is specifically described, and running along Lincoln street in that village its entire length, except at two places, where it leaves the street for a short distance. It alleges in general terms that Lincoln street is not one of the principal streets of the village, but is unimportant and very little traveled. The application is based wholly upon the petition, verified by the president of the petitioner.

The village authorities do not oppose the building of the railroad. They favor its construction, but oppose its location in the street. The opposition is supported by affidavits of the president and trustees of the village, and many of the residents thereof, who state that this street is one of the principal traveled streets of the village, continuously in use, is narrow, being 22 to 27 feet between curbs; that the main sewers and water line of the village are laid in the street, and that the railroad line for the greater distance is located immediately over the sewer pipes, and in many instances over the water pipes; that the operation of the railroad by locomotive or electrical or other mechanical power would greatly hinder, obstruct, and make the street dangerous and unfit for travel, and they point out another route over a private right of way, which seems entirely feasible. It is claimed on behalf of the village that the reason for the desire upon the part of the petitioner to construct its railroad in the street is to obtain a free right of way. It is true that the petitioner alleges in its petition that it intends to use electric power for operating the railroad, but it also alleges that it has the right to use steam as well. And right in that connection it is contended on behalf of the village that, in fact, the petitioner is a street surface railroad corporation, but was organized as a steam railroad corporation to avoid the requirements of law applicable to street surface railroad corporations. The certificate of incorporation of the petitioner is not before us, and we have no means of knowing precisely the form of its organization or its powers, except as they are stated generally in the petition. If it is in fact a street surface railroad corporation, then, as has been pointed out, the petitioner has no authority whatever to construct its railroad in this street. If it is not, but is organized under the general provi-

sions of the railroad law as a steam railroad corporation, as this seems to be, the application must be disposed of according to the rule applicable to such a corporation, without regard to what its intent may have been in adopting the particular form of organization.    There is a wide difference as regards the use of streets between the rights of a railroad company organized under the general provisions of the railroad law and a street surface railroad company.    The design of the former is ordinarily for traffic between localities, and the right to the use of the street is merely incidental, while a street surface railroad corporation, as the name implies, is organized for street traffic in the locality, operating upon and along the public thoroughfares of the municipality, and, although neither is limited to that kind of traffic, such are their respective primary purposes.    This distinction has heretofore been recognized in passing upon applications of this character.    Burt et al. v. Lima & H. F. R. Co. (Sup.) 21 N. Y. Supp. 482; Matter of Keeseville, Ausable Chasm & L. C. R. R. Co., 116 App. Div. 72, 101 N. Y. Supp. 237.    We do not now hold that the situation may not be such as to make it proper to permit this railroad to be constructed along this street, but, upon the facts before us, we think the petitioner has failed to show the necessity therefor.    The mere fact that it is more convenient and less expensive for the railroad than some other route is not of itself sufficient to warrant the order. Both of these circumstances may properly be considered, but they are not controlling.    If the facts are as disclosed by the affidavits in opposition to the application, we think the order should not be granted.    It is possible that the necessity and propriety of such an order may be made to appear by taking further evidence before the court or a referee appointed for that purpose.

The order should be reversed, with $10 costs and disbursements, and the matter remitted to Special Term for its further action thereon. All concur, except WILLIAMS, J., who dissents.